We're going to move now to appeal 23-3167 James Reilly v. Will County Sheriff's Office We're going to begin with oral argument first. Mr. Brown from you. Yes, I thank you. Good morning. May it please the court. My name is Dylan Brown and I represent the appellant James Reilly. The two issues that this court needs to decide are first was an error for the district court to simultaneously deny Mr. Reilly's motion to alter judgment and deny his motion for leave to file his proposed amended complaint. The question then becomes was the amendment itself sufficiently pled or was it untimely and futile. The district court did not address the content of the proposed amendment but instead ruled that Reilly's new allegations did not present newly discovered evidence which is not the standard we would argue at this procedural context. The district court's failure to apply the 15A2 standard is error which is the same conclusion that this court came to in Runyon, O'Brien and Clark all discussed in our briefing. In Clark this court stated that quote if he can prove his allegations and also show that a reasonable person would not have discovered his injury earlier he would have a defense to the time bar. We believe it would not have been reasonable under Clark for Reilly to think that he had suffered a constitutional injury prior to the defendant Kelly's spontaneous admission in July 2022. That's because one all of the candidates that were promoted over Mr. Reilly were presumptively qualified under the Bear Commission rules. Two because the candidates were presumptively qualified there was no evidence of Kelly's retaliatory motives in passing over Mr. Reilly. Is it words motives circumstances what metric are we supposed to use? Well you're certainly the words that came out of the defendant Kelly's mouth which as we quoted said why would I promote Reilly he said these nasty things about me and so I would never promote him under these circumstances. And the question is did that knowledge come earlier as a result of the circumstances? No that knowledge only came out in July 2022. Why don't you unpack that because obviously your opponent disagrees and thought the retaliatory context arose earlier. Sure well I think their argument is that the retaliatory conduct was between the time frame of 2017 to 2019 when Mr. Reilly was eligible to be promoted but was passed over five times. Now we would say our argument is that our client had no knowledge of the motivations the we argue unconstitutional motivations behind it. So therefore how could he possibly have pled that he was protected speech was the reason for him not being promoted when he could only learn about that in July of 2022. So any claim that was made prior to Mr. Kelly's spontaneous admission would have just been purely speculative. I mean it would be borderline sanctionable which is similar to the scenario that this court encountered in Spring of the Durflinger. So because everything about the promotions were presumptively valid on their face there Mr. Reilly had no not even an inkling that there was something unconstitutional happening. Clearly the statements are direct evidence but you don't just have to rely direct evidence also can be circumstantial evidence. There could be circumstantial evidence but I would posit what could that be? I mean there are a myriad. Being passed over five times. Well sure but the thing is there are of course there are myriad legitimate reasons why Kelly could have decided not to promote Reilly that had nothing to do with protected speech. Maybe he didn't like him personally. Maybe he wanted to promote his friends instead. Maybe he didn't like how he worked the case earlier. But the fact of the matter is that Kelly never had to disclose why because under the Merit Commission rules everything he did was valid. And Judge Kelly says oh well Reilly should have been suspicious because lesser qualified candidates were being promoted over him. But under the Merit Commission rules that really is a misnomer because the Merit Commission rules do not hold that test scores alone are dispositive about who from the top three candidates is more or less qualified. So say it a different way. Merely having the highest test score as Reilly did did not automatically entitle him to a promotion just as whoever is second or third on the list isn't automatically lesser qualified. I mean I'll submit to the court there is a litany of reasons why someone could get promoted that don't have to do just with the test score. There are job performance evaluations. There is education experience. There's numbers of years in law enforcement. There are commendations that these would-be sergeants receive over their years in law enforcement. So again there's any number of reasons why he was quote unquote passed over. And just because these other would-be sergeants were second or third doesn't necessarily mean that Jim Reilly was more qualified than they were. So it was all presumptively valid on its face. So when he says oh shucks I guess it's not my time again and then when the period expires at that point we argued that it wouldn't be reasonable for him to know that it was unconstitutional and maliciously motivated. And we don't believe that First Amendment free speech law requires him to undergo some sort of inquiry as to the true motivations about why he was being passed over. And I'll submit to the court that I don't believe that absent defending Kelly's spontaneous candid admission in 2022 that Reilly would ever know the true unconstitutional motivations behind why he wasn't promoted. And it's very logical to assume that if Sheriff Kelly was presented with an opportunity to explain why he did not promote Mr. Reilly that arguably he might not be candid about that reason. And again there could be a million different reasons that would be facially legitimate that don't speak to his true motivations. And I would argue that if this admission didn't come out in 2022 this case would never have been filed because Mr. Reilly would not have the requisite facts to adequately plead a cause of action for First Amendment retaliation. And I think it's important to think about the context of July 22. What did Mr. Reilly do when he got this information? He acted. Within two weeks he files a grievance and shortly thereafter he starts contacting lawyers to file this very lawsuit. So he didn't delay and for those reasons I mean we believe this case is exactly why the discovery rule exists and why this court should find that Heilman versus Mays is much more analogous than Thielen was an ADA case that the district court relied on. And additionally we believe that equitable tolling also applies here and disagree with Kelly's claim that Reilly disavowed that argument with a single sentence from his response and Kelly argues that it's not applicable because Reilly failed to seek additional information. But he's completely silent on what this additional information is, could be, the fora for getting it. I mean he filed a grievance unfortunately that didn't uncover any additional facts about the motivations. And so we find it slightly implausible to think that he had any mechanism in between 2017 and July 2022 to actually ascertain the true motivations behind it and absent this spontaneous admission he would never have known that. And he could never adequately plead it because he wouldn't have the adequate facts. Would you reserve the remainder of your time? Yes, sir. Thank you very much. Thank you, Mr. Brown. Mr. Mannion, we'll move to you.  Good morning, Your Honors, and may it please the court. My name is Ryan Mannion and I represent the appellees, the Wilk County Sheriff's Office and Sheriff Kelly in this appeal. This court should affirm the district court's judgment. Judge Gettleman properly evaluated the allegations in Reilly's original complaint, determined those were barred by the statute of limitations, fielded the Rule 59E motion to alter or amend the judgment. Immediately following the entry of judgment, looked through the new allegations there and determined that nothing changed the analysis for the accrual of the claim. Do you want to speak to the accrual of the claim issue, that direct circumstantial evidence question? Yes, Your Honor. Reilly believes in his brief, asserts in his brief, asserted to the district court that he needed to know about the allegedly unconstitutional nature of his injury for his claim to accrue. A number of cases, both out of this court, also out of the Supreme Court, reject that very premise. Gekas is the first one that I will cite to, which states that in the First Amendment retaliation context, the claim accrues upon the allegedly retaliatory act. We also cited to the Toby case. Forgive me, I won't try to pronounce the defendant's surnames. I'm sure I would butcher them. But in Toby, this court went and said that Toby had all the knowledge he needed to file a claim. His failure to investigate his legal rights for more than two years does not postpone the accrual of his claim. Toby also relied on a case known as Kubrick against the United States. That's out of the Supreme Court in 1979. Toby quotes it at length. And Toby goes and says that it is on the putative plaintiff to go and investigate his claims. Excuse me. Kubrick is an FTCA case. It's a medical malpractice case. But still, the following quote we believe is apt. Quote, we thus cannot hold that Congress intended that accrual of a claim must await awareness by the plaintiff that his injury was, in this case, negligently inflicted. A plaintiff, such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitation statute. That's exactly what's going on here, Your Honors. And if we look at the practicalities of the situation involving the argument advanced by Riley, Riley is saying that he could have laid in wait for years, perhaps until the sheriff was on his deathbed in 20 years, 30 years, however long it may be, wait for some kind of statement or awareness on his own behalf that his rights may have been violated. And he would say, aha, that is the moment that my claim accrues. That cannot be the case. It would destroy the statute of limitations and leave the statute of limitations wholly at the mercy of the testimony of the plaintiff as to when he recognized he may have a cause of action. Your Honor. Why is that inconsistent with what we've said outside of cases that implicate Heck versus Humphrey? Why should a plaintiff have to bring a cause of action before they know or should have known that they have a claim? Well, Your Honor, I don't think in this situation that Riley was unaware of his responsibility to investigate his claims to go forward. Heck speaks to a wholly different context, of course. It deals with when an incarcerated individual needs to have the favorable termination requirement of Heck.  And to me, when you're citing Nagikis, it kind of goes along that line. Here, I don't view that. I'm viewing his claim under our case law as accruing when he knew or should have known. And I'm taking it that you're disagreeing with that. I'm not disagreeing with that normal statement of the law. However, Nagikis goes, or Geckis goes, and says that it's the allegedly retaliatory act. And in this case, that is the failure to be promoted. It's not when the debate happens in July, June of 2022. Numerous other cases in similar context, Palmer against Indiana University, we cite that in our brief, goes and discusses that the failure to get a promotion, that is the moment that that Title VII claim accrued. Chardon against Fernandez in the 1983 context out of the Supreme Court, again cited in our brief, and even discussed in Heilman. It's quoted in the very case that plaintiff wants this court to rely principally upon, which we have other issues with Heilman, and I'll get to those momentarily. But Chardon goes and says that it is the, quote, operative decision of the state actor that gives rise to the accrual of the claim. And here, the operative decision is the decision not to promote rightly. It's not about the later in time explanation. Riley also brings up Rule 11 and trying to say that it would have been frivolous, but Rule 11b-3 doesn't prevent him from bringing this claim and stating on information and belief, there was a causal connection between my failure to be promoted and running for office or the statements I made about Sheriff Kelly. It's the new or should have known about the decision not to promote. I'm sorry. I'm trying to meld the standards. It's the new or should have known about the decision not to promote. Is that the accrual date? Yes, Your Honor, if I'm understanding your point correctly. You're not disagreeing that the new or should have known standard applies. You're just pinning it to the date of the decision or action, not the words. To the date of his injury, which we believe is the standard in numerous cases. Chardon, Ricks, Gigas, Tobey, all of them. And here the injury is without a doubt, and even Judge Gettleman says this in his order granting the motion to dismiss, that the injury is the failure for Riley to be promoted to sergeant. His injury is not what occurs when he attends and participates in the debate in 2022. It's when he does not secure the promotion to sergeant. I'll speak just briefly unless the court has any additional questions about accrual. I'll move quickly to the Rule 59e ruling by Judge Gettleman, as well as the proposed amended complaint. Judge Gettleman, in his order denying plaintiff's Rule 59e motion, goes and says nothing here is new. And Judge Gettleman goes and accurately, in our view, characterizes the new allegations contained in the proposed amended complaint. If Judge Gettleman had seen something that would have changed the statute of limitations analysis, we can anticipate that Judge Gettleman would have said as much in his order. Nothing is there to that effect. But he didn't give plaintiff a chance to make that case correct. I'm sorry, can you perhaps restate the question? Sure. So I guess the issue that I'm seeing with this case is one of process and procedure. So, for example, you just said a few minutes ago Mr. Riley should have investigated. Investigated how? Well, discovery will show that, right? Because I don't think any case you cited comes from the 12b-6 procedural posture. You relied on many summary judgment cases finding claims untimely. So where is the support for cutting a plaintiff off on limitations grounds at the 12b-6? Because Runyon seems pretty supportive of Appellant's position. Yes, Your Honor. So I'll point you to the Tobey case. That is a 12b-6 case. That's 890F3-634 cited in our brief. Admittedly, I don't have the page site handy on where we put it in our brief. But it is in there. That is a 12b-6 case. As to Runyon, if Your Honor disagrees with our read on Judge Gettleman's handling of the Rule 59e motion, obviously this court can affirm on any basis that's fairly presented to the district court and fairly presented in the record. Futility is an independent reason, and this court looks at that de novo. It's fully briefed to Judge Gettleman. May I continue, Your Honor? Both sides fully briefed the issue of futility to this court. This court also does not remand cases to the district court if doing so would be futile. And, again, in plaintiff's proposed amended complaint, there's nothing that changes the accrual date of his claim. And so unless the court has any additional questions. No, thank you, Mr. Manion. We would ask the court to confirm. Thank you very much, Your Honor. Thank you. Mr. Brown, we'll move back to you now for a bottle argument. Okay. I don't have much time, so I'll try to keep it brief. You know, there's a lot of conversation about whether he investigated. And I think there was a pointed question about, well, what could he have done to investigate? And I brought that up earlier. And I think it's very clear that his investigation did determine that all of the promotions were by the book under the rules of the Merit Commission. And there was no evidence that Kelly's motives were retaliatory because he never at any point was forced. And maybe that's not the best word. But at no point was he obligated to explain why he made the promotional decisions he did. And there's something else that I think gets analyzed a lot in these cases, and that's suspicious timing. And we've talked about that in our briefs. There was no suspicious timing connected to any statements that he made vis-à-vis on the campaign trial vis-à-vis these promotions that we allege were improper. He was not punished in any way at any point close in time to his campaign statements. He was never fired, demoted, reprimanded, given poor work assignments. None of the promotions at issue were close in time to Raleigh's protected speech. And I think that's something that must be taken into consideration. And there's a mention of Heilman. And there's a great quote in Heilman where this court states, the general test for claim accrual is when did the plaintiff know or should have known that her constitutional rights had been violated. This is a fact-intensive inquiry in which both the surrounding circumstances and the claims the plaintiff herself is trying to raise are critical. We have not been afforded the opportunity to do this fact-intensive inquiry. And I would also argue that his constitutional rights being violated could not have been adequately pled without Judge, or I'm sorry, without Defendant Kelly's statements in July of 2022. I'm over my time, but I'm here for any questions. Thank you, Mr. Brown. Thank you, Mr. Mannion. The case will be taken under revision.